If the gas-light company had surplus profits, it was the duty and the right of the respondents to *Page 204 
assess the value thereof, for the purpose of taxation. That it did have such profits, was evidenced by the fact, that once in the year 1870, and twice in the year 1871, its directors put resolutions upon its books, to issue certificates to its stockholders, to the extent in the whole, of 100 per cent of the stock of the company; and by the claim made in its behalf by its attorneys, that the company had for many years before these resolutions were adopted, been expending money which belonged to the stockholders as profits, out of its earnings, in improving its property and extending its mains. It is true, that there were counter-statements made to the respondents. The secretary of the company, made one under oath, that the amount of profits or reserved funds, exceeding ten per cent of capital, after deducting therefrom the amount of the real estate as set forth in the same statement, was "none." He afterwards made another statement under oath, that it had no surplus profits or reserved funds, exceeding ten per cent of its capital, in funds in its treasury, or in property of any kind; and that its only property consisted in real estate and gas mains. He does not, however, deny the issuing of $1,000,000 of certificates; but gives his opinion, that they are a debt of the company, and not a surplus profit or reserved fund. This expression of opinion, is suggestive of the basis, upon which the denial of the existence of profits or reserved fund was made by him; and opens the door for an inference, that in his judgment the profits had been handed over to the stockholders, and existed in their hands in the form of an indebtedness against the company. It is obvious that his general denial, with this showing of what belief or mental operation it was built upon, was not of the force of a fact proven or even asserted. It did not have the effect of denying that the company had made profits. It in effect admitted that it had, but asserted that they had been put into mains and real estate, and were by force of the certificates outstanding as a debt. The respondents had this evidence to pass upon from the acts and declarations of the officers of the company. They were also *Page 205 
assisted by the fact, that in the market the stock of the company ruled at a certain price, and that these certificates ruled at a certain other price. We can scarcely blame them for believing what the public believed; viz.: that the directors of the company did not do a vain or wicked thing, when they estimated the profits of the company from its earnings at $1,000,000, and put forth serious printed certificates, in the form of obligations to that amount.
We are not able therefore to find anything wrong in the action of the respondents, in their determination of what the proof was before them.
Had the officers of the company stated in credible manner, that though in 1870 and 1871 they were justified in the judgment that the company had made a million dollars of surplus profits; yet that, in 1878 it was apparent, that a general shrinkage of values had affected it, and had given the facts in detail which showed that the property into which those profits had been put, had so much lost in value as that there did not exist that amount or any amount of surplus profits; a different case would be presented, and the action of the respondents would be seen in a different light. Instead of this it admits that it decided in 1870 and 1871 that profits had been accumulated and invested in real estate and mains; and in 1878 does not deny it, or affirm that it was mistaken, but asserts only, for that is the effect of the secretary's statements, — that they have become an indebtedness against it. The detail of depreciation furnished by that officer, is this; that the value of the stock of the company has been much depressed in value by the falling off in the consumption of gas, and its reduced price; and shows the extent of that depression by stating that the stock had sold on a day named at 91¼ and 81 per cent. The respondents received that fact as proof, and made their assessment of the stock, in accordance. They also found by some means that the certificates had sold as low as 95 per cent and received that fact as proof, and made their assessment of surplus profits in accord therewith. The respondents acted *Page 206 
upon facts, when facts were brought to them; but when contrarious statements were made, they believed those which best satisfied their judgments.
It is claimed, that the legal effect of the issuing of the certificates, was to divide the profits among the stockholders, and that they ceased to be surplus profits. A promise to divide, is not a dividing; more than a promise to pay is a payment. If profits existed, they remained with the company, until they were actually handed over to the stockholders proportionately. That has not yet taken place. At most, there is an obligation existing to do it, at some indefinite time.
It is, with some inconsistency, claimed that these certificates when issued created an indebtedness, which should have been allowed by the respondents as a deduction from the value of the surplus profits. But, if it be conceded that the certificates are valid instruments, enforceable according to the terms of them, they are not evidences of indebtedness. A holder of them, cannot of his own will alone, demand and have from the company a sum of money. The most that he can do is to exact interest twice a year, and when the company shall have fixed a time, take the amount of them in money or in stock, as the company shall choose. This is not a declaration of indebtedness in an amount ultimately to be paid. The issuing of a certificate of stock for one of the certificates, would be but the giving of written evidence that the holder was entitled to a share to the amount named, in the property of the company after the payment of its debts. The property would still be in the control of the company. No one could take it away, the company not consenting. Remaining with the company, it is there taxable, in whatever form it assumes known to the tax laws.
We see no error in the proceedings of the assessors, and their action should be affirmed.
All concur, except RAPALLO, J., absent.
Judgment affirmed. *Page 207