THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE AMERICAN FIRE INSURANCE COMPANY v. THE COMMISSIONERS OF TAXES AND ASSESSMENTS OF THE CITY OF NEW YORK, RESPONDENTS.

*Insurance company — issue of scrip to its policyholders — when the fund represented by it forms part of its taxable property.*

A fire insurance company, in pursuance of the provisions of its charter, issued to its policyholders, from its annual net profits, scrip which bore interest not exceeding six per cent annually. The fund represented by the scrip was contingently liable for future liens and expenses of the company. When the

262 PEOPLE ex rel. AM. INS. CO. v. COMRS. OF TAXES.

First Department, November Term, 1882.

fund exceeded a specified sum, one-half of its annual increase was to be applied towards redeeming the scrip, commencing at the earliest in date.

*Held,* that so long as the company retained in its possession the fund represented by the scrip, such fund was properly included in the assessment of its property by the commissioners of taxes and assessments.

Certiorari to review the action of the commissioners, by which they included in the assessment books and rolls for the year 1882 certain moneys held by the relator.

*Charles E. Miller,* for the relator.

*George P. Andrews,* for the respondents.

Brady, J.:

The relator is a fire insurance company, incorporated under the general act for the incorporation of fire insurance companies, passed in June, 1853, and doing business in the city of New York.

In arriving at the amount of its taxable property, the commissioners took into consideration the sum of $302,965, which the relator claimed should have been excluded, because of the issuance to the policyholders of the company of certain certificates called scrip; and which they claimed was not liable to taxation, because the fund was held by the company for the payment of the certificates of scrip mentioned, and issued by them to policyholders in pursuance of the contracts under which policies were issued. This scrip was issued to pay premiums, under section 25 of the charter of the company, which declares that the board of directors may, at any time thereafter, by a vote of two-thirds thereof, and with the assent of two-thirds in amount of the stockholders, give to the holders of the policies of the company the right to participate in its profits, and to such extent, in such manner and upon such terms as shall be prescribed in and by such vote and assent. And it was provided in due form that seven per cent of the capital stock and the undivided surplus should be set apart for the stockholders. The balance of interest for the year from loans and investments and discounts on losses paid before maturity, and the amount of premiums earned during the year, were to be ascertained, and the sum of these to be considered the gross receipts. The expenses were then to be deducted, and the balance was to be regarded as

the net profits of the year. It was further provided that one-fourth of the net profits, when ascertained, should be set apart for the stockholders, in cash, and the remaining three-fourths set apart as a reserve fund, of which an amount not exceeding fifty per cent of the premiums earned on participating policies, was to be divided among the holders of such policies in scrip, which should bear interest not exceeding six per cent annually. The reserved fund not divided to policyholders, it was further provided, should be first liable, to its entire extent, for all losses and expenses in any year exceeding the gross receipts, and such reserved funds being exhausted the fund represented by the scrip should then be liable, to its entire extent, for all such losses and expenses, each later annual issue of scrip or stock to be first reduced or wholly canceled before any previous annual issue was reduced, and all the annual issues were to be canceled before the surplus or capital of the company, or any portion thereof, should be applicable to such losses. The board of directors were authorized to apply the fund and cancel the scrip for the purposes and in the succession mentioned, as the exigencies of the company might require. It was also provided that when the fund represented by the scrip should exceed $500,000, the directors were not to apply less than one-half of the annual increase of the fund towards the redemption of the scrip, commencing at the earliest in date.

It will have been observed from what has been said that although there was authority for the issuance of the scrip, which refers to a division of profits, yet such profits were not actually divided by the issuance of the scrip, and were to be retained by the company and, in certain contingencies, to be used to pay its losses; and that being so, it seems to be very clear that the scrip is nothing more than a promise to pay, in a certain contingency, a fixed sum of money to the holder, with interest. If the reserved fund, for example, be exhausted in the payment of losses and expenses, and resort must be had to the fund set apart for the stockholders, then the board of directors is to apply it and cancel the scrip, if necessary, for the purposes and in the succession mentioned. So that the fund which is represented by the scrip is held subject to the necessities which may require its use for purposes other than the payment of the scrip in reference to which it was issued.

The question involved in this case is, therefore, one which has already been decided by the Court of Appeals and adversely to the claim of the relator. (*The People ex rel. The Williamsburg Gas-Light Company* v. *The Board of Assessors of the City of Brooklyn*, 76 N. Y., 202.) In that case it appeared that the company having accumulated the profits and reserve fund, issued certificates to its stockholders to the amount of $1,000,000, which were similar in form to the scrip issued in this case. The assessors refused to make a deduction on account of such certificates, and the company reviewed their action by *certiorari*. Folger, J., in delivering the opinion of the court, said, in the course of his opinion: "It is claimed that the legal effect of the issuing of the certificates, was to divide the profits among the stockholders, and that they ceased to be surplus profits. A promise to divide is not a dividing; more than a promise to pay is a payment. If profits existed they remained with the company until they were actually handed over to the stockholders proportionately. That has not yet taken place. At most there is an obligation existing to do it at some indefinite time."

We are unable to distinguish the difference in principle between these two cases. We think, therefore, the action of the commissioners should be affirmed. Ordered accordingly, with costs.

Daniels, J., concurred.

Present — Brady, P. J., and Daniels, J.

Proceedings affirmed, with costs.